Melvin Arthur HILLER and Dawen, Inc., Plaintiffs,

v.

Michael J. MURPHY, District Director, IRS, et al., Defendants.

Civ. A. No. C83–2657A.

United States District Court, N.D. Georgia, Atlanta Division.

July 5, 1984.

in § 1981 lawsuits. *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981).

James C. Watkins, Joe W. Gerstein, Doraville, Ga., for plaintiffs.

Larry D. Thompson, U.S. Atty., Barbara V. Tinsley, Asst. U.S. Atty., Atlanta, Ga., Victoria J. Sherlock, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendants.

## ORDER

SHOOB, District Judge.

This is an action for injunctive relief seeking the return of materials seized from plaintiffs by agents of the Internal Revenue Service ("IRS"), the suppression of the materials from use in any future criminal proceeding, and a cessation of further investigations based on the seized materials. Defendants, all IRS officials, have moved for judgment on the pleadings.

■ Defendants first challenge the Court's subject matter jurisdiction. Plaintiffs predicate jurisdiction on Fed.R.Crim.P. 41(e), 28 U.S.C. § 1346(a)(2), and the Court's inherent equity powers. Section 1346(a)(2) of title 28 applies only to suits for money damages and is therefore inapplicable to this action seeking equitable relief. *Hunsucker v. Phinney*, 497 F.2d 29, 36 (5th Cir.1974) (on petition for rehearing).

■ However, whether premised on Fed.R.Crim.P. 41(e) or the Court's general equity jurisdiction, this Court does have the power, grounded in its inherent supervisory authority over its officers, to order the suppression or return of unlawfully seized property prior to the initiation of any civil or criminal proceedings flowing from the seizure. *Hunsucker, supra,* 497 F.2d at 32. Exercise of this so-called "anomalous" jurisdiction, however, is governed by equitable principles. *Id.,* 497 F.2d at 34. In determining whether jurisdiction is warranted in a particular case the Court should consider (1) whether the allegations of the complaint show a "callous disregard for ... constitutional rights," *id.* (quoting *Silbert v. United States,* 275 F.Supp. 765, 767 (D.Md.1967)), (2) whether the plaintiff has an individual interest in and need for the material whose return he seeks; (3) whether the plaintiff would be irreparably injured by denial of the return of the property, and (4) whether the plaintiff has an adequate remedy at law for the redress of his grievance. *Id.,* 497 F.2d at 34–35; *see also Richey v. Smith,* 515 F.2d 1239, 1243–44 (5th Cir.1975); *Mason v. Pulliam,* 402 F.Supp. 978, 980–81 (N.D.Ga.1975), *aff'd,* 557 F.2d 426 (5th Cir.1977).

Plaintiffs Melvin Hiller and Dawen, Inc., of which Mr. Hiller is president, allege in their complaint (1) that in November 1980 they engaged a broker to arrange the sale of either of two restaurants in the Atlanta area owned by plaintiffs; (2) that the broker arranged a meeting with two gentlemen identified as Jim Luke and Jack Fischer, who represented themselves as agents of a prospective purchaser from Florida; (3) that in reliance on their representations, plaintiffs made available to Messrs. Luke and Fischer the business records of one of plaintiffs' restaurants with the express understanding that such information was confidential; (4) that Messrs. Luke and Fischer were, in fact, special agents of the Criminal Investigation Division of IRS; (5) that in June 1981, based on information garnered from plaintiffs' records by Messrs. Luke and Fischer, the IRS obtained a search warrant from a United States Magistrate, searched the premises of plaintiffs' restaurant, and seized certain business records; and (6) that in November 1982 the IRS informed plaintiffs they were under investigation for possible violations of the federal tax laws.

■ The first question the Court must consider in determining whether it should exercise its jurisdiction here is whether, as plaintiffs claim, the alleged actions of the IRS agents, if proven, would constitute a violation of plaintiffs' fourth amendment right to be free from unreasonable searches and seizures. Plaintiffs rely on *United States v. Tweel,* 550 F.2d 297 (5th Cir.1977), in which the court held that records voluntarily supplied to the IRS by a taxpayer should have been suppressed in a subsequent criminal prosecution, because an IRS agent had obtained the taxpayer's agreement to supply the records by misrepresenting to his accountant that the investigation was civil instead of criminal. Applying the "well established rule that a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepre-

sentation of the Internal Revenue agent," 550 F.2d at 299 (citations omitted), the *Tweel* court found "that the agent's failure to apprise the appellant of the obvious criminal nature of this investigation was a sneaky deliberate deception by the agent under the above standard and a flagrant disregard for appellant's rights." *Id.*

Defendants, on the other hand, rely on the Ninth Circuit's recent decision in *Jones v. Berry*, 722 F.2d 443 (9th Cir.1983), where, on facts practically identical to those presented in the instant case, the court reversed the district court's grant of a pre-indictment petition seeking return and future suppression of evidence seized by the IRS. The district court in *Jones* had relied principally on *Tweel, supra,* in issuing its order, *see Jones v. Berry,* 524 F.Supp. 645, 651 (D.Ariz.1981); however, the court of appeals distinguished *Tweel* on the grounds that

> [t]here, IRS agents, known to the suspect to be IRS agents empowered to conduct civil audits, abused the voluntary civil tax reporting and investigation system by inducing the suspect to turn over records for a criminal investigation. Thus, they abused the powers of their positions. Here, by contrast, the IRS agents did not pretend to be civil agents, thereby implicitly invoking their powers as civil investigators, when in fact they intended to conduct a criminal investigation. Rather, the agents pretended to be fellow criminals in order to gain the Joneses' confidence. Such deception is

far different from that practiced in *Tweel.*

722 F.2d at 447 n. 5. Citing *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966), where the Court stated that the fourth amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it," the court concluded that the IRS agents' activities did not constitute a search within the meaning of the fourth amendment:

> [W]e believe that *Hoffa* and its progeny compel the conclusion that when, as here, undercover agents gain the confidence of one suspected of criminal activity, and the suspect later voluntarily reveals to the agents evidence of crimes, he or she can have no expectation of privacy in the information so revealed. [Citation omitted.] Government discovery of information or activities, as to which a defendant exhibits no expectation of privacy, is not a search within the meaning of the fourth amendment.

722 F.2d at 447–48.

This Court agrees with the Ninth Circuit's reasoning and finds that *Tweel, supra,* is not applicable to the facts presented in the instant case.[1] Accordingly, plaintiffs' complaint fails to allege facts establishing a violation of plaintiffs' fourth amendment rights. In the complete absence of any alleged constitutional violation, the Court deems it unnecessary to consider the other factors relevant to exercise of its jurisdiction over plaintiffs'

---

**1.** The Court notes that the facts of the instant case do differ from *Jones* in one particular. The agents in *Jones,* posing as potential purchasers of the taxpayers' business, expressly suggested that they were interested in a business that could generate substantial skimming and demanded to see records supporting the business's purported skim, whereupon the taxpayer produced records that substantiated the skim. 722 F.2d at 445. Hence, the court of appeals characterized the agents' deception in *Jones* as "pretend[ing] to be fellow criminals in order to gain the Joneses' confidence." *Id.* at 447 n. 5 (*quoted* in text *supra* ). In the instant case, on the other hand, there is no indication that the undercover agents told plaintiffs they were interested in skimming profits from the business, or that

plaintiffs specifically produced any records to show that skimming was possible. Thus, paraphrasing *Jones,* the agents' deception in this case is more appropriately characterized as "pretending to be fellow *businessmen* in order to gain the taxpayers' confidence." The Court, however, does not find this difference in the nature of the agents' deception in the two cases to be significant in evaluating the fourth amendment issue. That the taxpayers in the instant case believed the IRS agents to be legitimate businessmen, and not criminals, does not alter the essential fact that they voluntarily revealed to the agents records containing evidence of possible criminal activity and thereby exhibited no expectation of privacy as to such information.

claims.[2] Finding that plaintiffs have alleged no violation of their constitutional rights by the defendant officials, it clearly would be inappropriate for the Court to exercise its equitable jurisdiction to correct its officers' abuses of power.

 Accordingly, treating defendants' motion for judgment on the pleadings as a motion to dismiss, the motion is GRANTED, and this action is hereby DISMISSED without prejudice.[3]

2. In any event, given plaintiffs' delay in filing suit of more than a year after first being notified of IRS's criminal investigation and of more than two years after the allegedly unconstitutional searches and seizure took place, it would not appear that plaintiffs' need for the material whose return they seek is particularly pressing. This factor also would weigh against the exercise of jurisdiction, even though plaintiffs are admittedly threatened with potential irreparable harm in the form of a criminal indictment, and other legal remedies may be inadequate. *See*

*Richey, supra,* 515 F.2d at 1243 n. 10 & 1244 n. 11.

3. This Court's decision that exercise of its equitable or supervisory jurisdiction is not warranted in this case is not a final adjudication on the merits of plaintiffs' claims, and the dismissal of plaintiffs' action is accordingly without prejudice to adjudication of plaintiffs' claims in an appropriate future proceeding. *See Hunsucker, supra,* 497 F.2d at 36.