Hal HAMPTON, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4580.

Supreme Court of Wyoming.

Jan. 6, 1977.

human being by striking him about the face with what appeared to be an axe handle. The second count of the Information charged the malicious perpetration of an assault by pointing a pistol at a human being. A trial to a jury resulted in Hampton's conviction on Count I of the Information, and his acquittal on Count II of the Information. Hampton appeals from the Judgment and Sentence of the Court, entered upon the verdict of the jury, pursuant to which Hampton was sentenced to not less than one year and not more than four years in the State Penitentiary.

The facts underlying Hampton's conviction are found in events which occurred in and near the Burlington Northern Railroad Depot in Sheridan, Wyoming. At about the hour of 5:00 p. m. one afternoon Hampton became involved in an argument with an official of the railroad which resulted in a fist fight between those two. The railroad official prevailed in the fight, and Hampton left the premises. Not long after that, when the railroad official left the depot with other persons Hampton confronted him with a pistol which Hampton cocked and pointed at him while stating an intention to kill him. Hampton was persuaded, however, to withdraw from this confrontation.

Thereafter, the railroad official entered an automobile sitting in the right side of the front seat. Another employee of the railroad entered the driver's side of the vehicle. Hampton then reappeared with what Hampton himself testified was a Handyman jackhandle. He proceeded to use this jackhandle to pound upon the automobile in which the railroad official was seated striking both the metal and glass

Gary L. Shockey, Sr. Law Student Intern, and Gerald M. Gallivan, Laramie, for appellant.

V. Frank Mendicino, Atty. Gen., H. J. Arnieri, Asst. Atty. Gen., James L. Edwards, Legal Intern, Cheyenne, and James N. Wolfe, Sheridan County Atty., Sheridan, for appellee.

Before GUTHRIE, C. J., and Mc-CLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

An Information was filed against Hal Hampton in the District Court charging him in two counts with violations of § 6–70 B, W.S., which proscribes the malicious perpetration of an assault or an assault and battery upon any human being while armed with a dangerous or deadly weapon.[1] The first count in the Information charged an assault and battery upon a

---

1. At the time of the offenses alleged, § 6–70, W.S. read as follows:

"*Aggravated assault and assault and battery.—*
"A. If any person shall unlawfully and maliciously inflict upon another person, any grievous bodily harm the person so offending shall be fined not more than one thousand dollars ($1,000.00) or be confined in the county jail not more than one (1) year, or both.

"B. Whoever, while armed with a dangerous or deadly weapon, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both." Chapter 47, S.L. of Wyoming, 1961, as amended by Chapter 165, S.L. of Wyoming, 1965.

surfaces. An estimate of the cost of repairs to the vehicle entered in evidence shows damage to the metal surfaces of the vehicle in the total amount of $139.44.

When the employee who was in the driver's seat observed what was occurring he opened the door and remonstrated with Hampton. Hampton then went around to that side of the vehicle, and struggled with that employee in an attempt to enter the vehicle while, in the meantime, jabbing with the jackhandle at the railroad official with whom he had earlier fought. He did make contact with the official's forehead causing a laceration requiring three or four stitches to close. Shortly thereafter Hampton's father appeared upon the scene, and persuaded Hampton to desist from his activities.

The Handyman jackhandle was not entered into evidence, and is not a part of the record in this case. It was described by the several witnesses as a short club, an axe handle or stick, a jackhandle, a pick handle, and a spiking mall handle, with dimensions of from 22 to 24 inches long to one-half to three feet long, and a diameter of a couple of inches. One witness stated that he believed that if swung hard enough the jackhandle would have been capable of breaking a side window on the automobile.

In submitting the first count of the Information to the jury the District Court initially instructed on the elements of assault and battery with a dangerous or deadly weapon. The court then instructed the jury that the crimes of aggravated assault and battery without a dangerous or deadly weapon and assault and battery are lesser included offenses in the crime of as-

sault and battery with a dangerous or deadly weapon. Additional instructions were given setting forth the elements of assault and battery, and explaining certain aspects of the charged crime and the lesser included offenses. The instructions encompassed a definition of "grievous," in accordance with *State v. Woodward,* 69 Wyo. 262, 240 P.2d 1157 (1952), as follows:

"You are instructed that the word 'grevious' [sic] means causing greif [sic] or sorrow, painful, afflective [sic], hard to bear, offensive, harmful."

The jury also was advised:

"You are further instructed that when an instrument usually not to be considered dangerous or deadly is used in such a mammer [sic] that it is capable of inflicting grevious [sic] bodily harm upon another person then the instrument may be considered by you as a dangerous or deadly weapon."

In his appeal Hampton attacks the constitutionality of the statute by claiming that it is vague and that it deprives him of his right to equal protection of the laws. He attacks the instructions given by the court with respect to the definition of dangerous and deadly weapon, and he further complains of the inadequacy of the Information to charge and the evidence to demonstrate the commission of an aggravated assault and battery with a dangerous or deadly weapon.[2]

In essence Hampton claims § 6-70 B, W.S. is unconstitutionally vague due to the failure of the statute to define a dangerous or deadly weapon and to define grievous

2. In his brief Hampton states the issues in this appeal as follows:
"1. Does Wyo.Stats. § 6–70, as amended, 'Aggravated Assault and Assault and Battery' unconstitutionally violate a person's rights to due process of law for its failure to define adequately the terms 'grievous bodily harm' and 'dangerous or deadly weapon?'
"2. Does Wyo.Stats. § 6–70, as amended, 'Aggravated Assault and Assault and Battery' unconstitutionally violate a person's

right to equal protection of the laws by specifying grossly disparate penalties for acts with the same results?
"3. Did the trial court commit plain error when it improperly instructed the jury as to the definition of 'dangerous and deadly weapon?'
"4. Were the information and evidence adduced at Appellant Hampton's trial sufficient to sustain a conviction of aggravated assault and battery with a dangerous or deadly weapon?"

bodily harm which he asserts prevents a citizen from determining what actions are prohibited under the statute. Also with respect to his argument of vagueness Hampton relies upon the absence of standards to guide those charged with enforcement of the law contending that this results in differing applications of the statute thereby depriving him of due process of law to which he is entitled under Art. 1, § 6, Constitution of the State of Wyoming and Amendment 5, as applied to the states under Amendment 14, of the Constitution of the United States of America. In advancing his equal protection argument he asserts a deprivation of his rights under Art. 1, §§ 2 and 3 of the Constitution of the State of Wyoming which he claims is found in the failure of the statute to provide explicit standards by which the various degrees of punishment (as Hampton describes them) set forth in § 6–70, W.S. are to be invoked. He urges the proposition that the same conduct could be prosecuted under either § 6–70 A or § 6–70 B, W.S. His first two claims of error then are tied into his third claim of error by invoking the definitions given to the jury of a dangerous or deadly weapon and grievous bodily harm which Hampton argues demonstrate the vagueness and the possible inequality that he asserts with respect to the constitutionality of the statute.

The record in this case is devoid of any mention of unconstitutionality of § 6–70 B, W.S. on either the ground of vagueness or the ground of deprivation of the right to equal protection of the law. The record also fails to demonstrate any objection to the District Court's instructions such as that contemplated by Rule 31, W.R.Cr.P. The general rule is that these contentions will not be considered on appeal since they were not called to the attention of the trial court. *Moore v. State,* Wyo., 542 P.2d 109 (1975); *Connor v. State,* Wyo., 537 P.2d 715 (1975); *Booth v. State,* Wyo., 517 P.2d 1034 (1974); *Wright v. State,* Wyo., 466 P.2d 1014 (1970); *State v. Rideout,* Wyo., 450 P.2d 452 (1969); *State v. Woodward,* supra. They may be considered by this court only if they come within the procedural exception found in Rule 49(b), W.R.Cr.P.:

> "(b) *Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

While this Court has recognized that the plain error concept must be applied to each case on its own particular facts, and any attempt to define the term "plain error or defects affecting substantial rights" is unlikely to be helpful (*Hays v. State,* Wyo., 522 P.2d 1004 (1974)), still there are some accepted criteria which we invoke when a claim of plain error is presented. When review is sought under the plain error doctrine this Court must be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, that is, we are entitled to know the particular facts. E. g., *United States v. Meadows,* 523 F.2d 365 (5th Cir. 1975), *Sykes v. United States,* 373 F.2d 607 (5th Cir. 1966), cert. den. 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967); *Dimmick v. State,* Alaska, 449 P.2d 774 (1969). Further, the proponent of plain error must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. See e. g., *United States v. Dawson,* 486 F.2d 1326 (5th Cir. 1973); *United States v. Morales,* 477 F.2d 1309 (5th Cir. 1973); *United States v. Campbell,* 419 F.2d 1144 (5th Cir. 1969); *United States v. Mooney,* 417 F.2d 936 (8th Cir. 1969); *Evans v. State,* Alaska, 550 P.2d 830 (1976). If these criteria are met, the error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept procedurally expressed in Rule 49(a), W.R.Cr.P. E. g., *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946); *United States v. Amaral,* 488 F.2d 1148

(9th Cir. 1973); *People v. Barker,* 180 Colo. 28, 501 P.2d 1041 (1972). The assertion of a constitutional ground of error will not avoid the application of these criteria, and if they are not satisfied any claim for review under the plain error doctrine must fail. E. g., *Schleicher v. Wyrick,* 529 F.2d 906 (8th Cir. 1976); *State v. Malley,* 167 Conn. 379, 355 A.2d 292 (1974); *State v. Dayton,* Mo.App., 535 S.W.2d 469 (1976).

■■ Applying the admonition of *Hays v. State,* supra, that the plain error doctrine is to be exercised cautiously and only in exceptional circumstances, we conclude that the claims of error which Hampton seeks to have reviewed under the plain error doctrine do not satisfy the criteria set forth above. The particular facts of this case do not disclose a violation of any clear and unequivocal rule of law so far as Hampton's claims of statutory unconstitutionality are concerned. The legal theories advanced by Hampton are only arguable at best. This also is true of the asserted error in the instructions, but further, the claimed instructional error did not adversely affect any substantial right of Hampton.[3] Consequently, these claims of error cannot be considered in this appeal.

■ This leaves for disposition only Hampton's claim that the Information was not sufficient to charge under the statute and that the evidence was not sufficient to sustain a conviction. Hampton can point to the preservation of these points in the record, and does not have to rely upon the plain error doctrine. His points, however, are not well taken. In a recent case the rule that an information or indictment framed in the language of the statute is sufficient was reiterated. *Gonzales v. State,* Wyo., 551 P.2d 929 (1976). The Information in this case states that:

"* * * Hal Hampton * * * did unlawfully while armed with a dangerous or deadly weapon, maliciously perpetrate an assault and battery upon a human being, * * *."

It was framed in the language of the statute, and it does sufficiently charge the offense.

■ In attacking the sufficiency of the evidence Hampton contends that the State failed to prove that the Handyman jackhandle was used in a manner which would justify its categorization as a dangerous or deadly weapon. Viewing the evidence in the light most favorable to the prosecution, and affording it the benefit of every favorable inference that may fairly be drawn from the evidence, as we are required to do, there was substantial evidence to sustain the jury's verdict including its conclusion that the jackhandle was a dangerous or deadly weapon. *Evanson v. State,* Wyo., 546 P.2d 412 (1976); *Blakely v. State,* Wyo., 542 P.2d 857 (1975); *Harris v. State,* Wyo., 487 P.2d 800 (1971). It perhaps is only fortuitous that the victim here was not injured much more seriously.

The judgment of the District Court is affirmed.

---

3. We note that in *Evanson v. State,* Wyo., 546 P.2d 412, 416 (1976) this Court said that, "a weapon, when used in a manner capable of producing and likely to produce death or great bodily injury, is a deadly weapon." The instruction which was given, however, did adequately apprise the jury that there must occur an injury of a graver and more serious character than an ordinary battery. See *State v. Bowers,* 178 Minn. 589, 228 N.W. 164 (1929); *Hallett v. State,* 109 Neb. 311, 190 N.W. 862 (1922); *Herrington v. State,* Okl.Cr., 352 P.2d 931 (1960); *Shires v. Boggess,* 72 W.Va. 109, 77 S.E. 542 (1913).